IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL REIS, SR. and            )
LAWRENCE J. KATZ, on Their Own   )  Civil Action
Behalf and as Assignees of       )  No. 05-cv-01651
Weaver Nut Company, Inc.,        )
                                 )
            Plaintiffs           )
                                 )
        vs.                      )
                                 )
BARLEY, SNYDER, SENFT            )
& COHEN LLC.,                    )
                                 )
            Defendant            )

                    *    *    *

APPEARANCES:

         LYNANNE B. WESCOTT, ESQUIRE
              On behalf of Plaintiffs

         ARTHUR W. LEFCO, ESQUIRE
              On behalf of Defendant

                    *    *    *


                O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

         This matter is before the court on Defendant Barley

Snyder, LLC's Motion for Summary Judgment Pursuant to

Fed.R.Civ.P. 56, which motion was filed together with the

Memorandum of Law in Support of Defendant Barley Snyder, LLC's

Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56 on

January 30, 2012.[1]  Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment was filed March 19, 2012.[2]

After oral argument on defendant's motion for summary judgment conducted before me on May 9, 2012, I took the matter under advisement.  Hence, this Opinion.

SUMMARY OF DECISION

For the reasons expressed below, I grant defendant's motion for summary judgment.  Specifically, I grant defendant's motion on that remaining portion of Count I of plaintiffs' Amended Complaint alleging a claim for breach of fiduciary duty on behalf of plaintiffs Michael Reis, Sr. and Lawrence J. Katz, individually.  Summary judgment on this claim was granted because plaintiffs did not and cannot establish either that defendant was required to fulfill any fiduciary duties to plaintiffs, or that plaintiffs suffered any injury.  Accordingly, plaintiffs did not and cannot establish that any failure to act was a real factor in causing any injuries to plaintiffs.

In addition, I grant defendant's motion for summary judgment on the remaining portion of Count IV of the Amended

---

[1]     In addition to its motion and memorandum of law, defendant also filed Defendant Barley Snyder, LLC's Statement of Indisputable Facts in Support of its Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56, on February 28, 2012.  Furthermore, a Reply Memorandum in Support of Defendant Barley Snyder, LLC's Motion for Summary Judgment was filed April 9, 2012.

[2]     Plaintiffs' Response in Opposition to Defendant's Statement of Indisputable Facts in Support of its Motion for Summary Judgment was also filed March 19, 2012.

Complaint brought by plaintiffs individually alleging tortious interference with contractual relations by defendant.  Summary judgment on this claim was granted because plaintiffs did not and cannot establish either the absence of privilege or justification on the part of defendant, or actual legal damage as a result of defendant's conduct.

<u>JURISDICTION</u>

This action is before the court on diversity jurisdiction.  Plaintiff Michael Reis, Sr. is a resident of the State of Illinois and plaintiff Lawrence J. Katz is a resident of the State of New Jersey.  Defendant Barley, Snyder, Senft & Cohen, LLC is a Pennsylvania limited liability company.  The amount in controversy is in excess of $75,000.  <u>See</u> 28 U.S.C. § 1332.

<u>VENUE</u>

Venue is proper because plaintiffs allege that the facts and circumstances giving rise to the cause of action occurred in Lancaster County, Pennsylvania, which is in this judicial district. 28 U.S.C. §§ 118, 1391.

<u>PROCEDURAL HISTORY</u>

On April 10, 2005 plaintiffs Reis and Katz, on their own behalf and as assignees of Weaver Nut Company, Inc., filed their initial Complaint in this matter.  The original Complaint alleged five causes of action: breach of fiduciary duty

(Count I); professional negligence (Count II); abuse of process (Count III); interference with a contractual relationship (Count IV); and conversion (Count V).

On June 23, 2005 defendant filed its initial motion to dismiss.  Plaintiffs July 7, 2005 response included a request to amend the Complaint.  My Order dated March 17, 2006 and filed March 20, 2006 granted plaintiffs' request to amend.

On April 12, 2006 plaintiffs filed their Amended Complaint.  The Amended Complaint contains the original five causes of action and an additional cause of action for breach of contract (Count VI).  On May 2, 2006 defendant filed its second motion to dismiss.  On May 19, 2006 plaintiffs responded.

By my Order and Opinion dated March 30, 2007 I granted in part and denied in part defendant's motion to dismiss plaintiffs' Amended Complaint.

I granted defendant's motion to dismiss that portion of Count I of plaintiffs' Amended Complaint brought by plaintiffs Michael Reis, Sr. and Lawrence J. Katz, in their individual capacities, alleging a breach of fiduciary duty by defendant law firm, Barley, Snyder, Senft & Cohen, LLC ("Barley Snyder").

I granted defendant's motion to dismiss that portion of Count II alleging a claim of professional negligence against defendant Barley Snyder, brought by plaintiffs Reis and Katz, individually.

-4-

I granted defendant's motion to dismiss Count III of plaintiffs' Amended Complaint alleging a cause of action against defendant for abuse of process brought by plaintiffs Reis and Katz in their individual capacities.

Moreover, I granted defendant's motion and dismissed from Count IV of the Amended Complaint the claims of Reis and Katz, individually, alleging interference with an advantageous relationship by defendant.

Finally, I granted defendant's motion to dismiss Count V of plaintiffs' Amended Complaint alleging a cause of action against Barley Snyder for conversion brought by plaintiffs Reis and Katz in their individual capacities.

I dismissed all claims contested in the motion to dismiss on the grounds of a release. These claims were brought by plaintiffs Michael Reis, Sr. and Lawrence J. Katz acting in their individual capacity. They included breach of fiduciary duty (Count I), professional negligence (Count II), abuse of process (Count III), tortious interference with contractual relations (Count IV), and conversion (Count V).

I dismissed those counts because plaintiffs Reis and Katz entered into a release between themselves and Weaver Nut Company, Inc. ("the Company") and the other shareholders of the Company (E. Paul Weaver, III and his wife Miriam J. Weaver). The

release document released the Weavers, the Company, and its officers, directors and employees from all liability.

Although the release specified that it did not release defendant law firm from any claims, I concluded in this diversity action that, if confronted with the issue, the Supreme Court of Pennsylvania would recognize and rule that the release of the principals (the Company and the Weavers) would act as a release of the agent (defendant law firm Barley Snyder).

Specifically, I relied on the decisions of the Supreme Court of Pennsylvania in <u>Mamalis v. Atlas Van Lines</u>, 522 Pa. 214, 560 A.2d 1380 (Pa. 1989) and the Superior Court of Pennsylvania in <u>Pallante v. Harcourt Brace Jovanovich, Inc.</u>, 427 Pa.Super. 371, 629 A.2d 146 (Pa.Super. 1993) for the proposition that, as a matter of law, the release of the principals serves to release claims of any person or entity acting as an agent, servants or employees of the principals.

As a result of my rulings on defendant's motion to dismiss, the following six claims against defendant Barley Snyder remained in this lawsuit: Count I:  (1) breach of fiduciary duty brought by plaintiffs as assignees of the Company; (2) aiding and abetting breach of a fiduciary duty brought by plaintiffs individually; (3) aiding and abetting breach of a fiduciary duty brought by plaintiffs as assignees of the Company.  Count II: (4) professional negligence brought by plaintiffs as assignees of

the Company.  Count IV:  (5) tortious interference with contractual relations brought by plaintiffs as assignees of the Company.  Count VI: (6) breach of contract brought by plaintiffs as assignees of the Company.

By Memorandum and Order dated March 28, 2008, and for the reasons expressed in that Memorandum, I granted the Motion of Defendant, Barley Snyder, LLC, to Strike Plaintiffs' Demand for a Jury Trial, denied plaintiffs' Countermotion Pursuant to Federal Rule of Civil Procedure 39 and struck plaintiffs' Demand for Jury Trial filed June 29, 2007.  Thus, this matter was tried before me without a jury.

I presided over a 35-day non-jury trial in this matter on July 7-9, 11, 16-18, 21-23, 25, 28-29, August 6-8, 11-15, September 9-12, 18, 23-26, November 14, 2008, January 13-15 and 27, 2009.

By Verdict and Adjudication filed September 30, 2009, I found in favor of defendant Barley, Snyder, Senft & Cohen, LLC and against plaintiffs Michael Reis, Sr. and Lawrence J. Katz on all six claims.

Regarding Count I of plaintiffs' Amended Complaint, I found in favor of defendant on plaintiffs' claim for breach of fiduciary duty brought by plaintiffs Reis and Katz as assignees of the rights of the Company.  Specifically, I concluded that Barley Snyder did have a fiduciary duty to its client Weaver Nut

Company which demanded undivided loyalty and prohibited Barley Snyder from engaging in conflicts of interest.  A breach of such duty is actionable.  However, I concluded that Barley Snyder neither breached its duty of loyalty to Weaver Nut Company nor engaged in any other conflict of interest.

In addition, regarding the two other claims contained in Count I, aiding and abetting breach of a fiduciary duty brought by Reis and Katz individually, and aiding and abetting breach of a fiduciary duty brought by Reis and Katz as assignees of the Company, I concluded that E. Paul Weaver, III, as President of Weaver Nut Company owed fiduciary duties to Mr. Reis and Mr. Katz as shareholders of the Company, and to the Company, which he breached.

However, I concluded that plaintiffs failed to prove by a preponderance of the evidence that Barley Snyder either had knowledge of the breach by Mr. Weaver, or provided substantial assistance or encouragement to Mr. Weaver.  Rather, I concluded that based upon the information provided to Barley Snyder, the firm acted both legally, ethically, and in good faith, concerning both of its clients (the Weavers and the Company).

Regarding Count II alleging professional negligence against Barley Snyder, brought by Reis and Katz as assignees of the Company, I concluded that plaintiffs failed to establish by a preponderance of the evidence that Barley Snyder failed to

-8-

exercise the ordinary skill and knowledge which attorneys are required to utilize or that there were any damages owing to the Company as a result of the actions of Barley Snyder.

Regarding Count IV alleging tortious interference with contractual relations against Barley Snyder, brought by Reis and Katz as assignees of the Company, I concluded that a contract existed, but that defendant did not take purposeful action specifically intended to harm the existing relation because the law firm was the agent of the Company. Moreover, I concluded that there was either privilege, legal justification, or both, for the actions taken by defendant. Also, I concluded that plaintiffs failed to establish damages on Count IV by a preponderance of the evidence.

Finally, Count VI alleged breach of contract for the professional services rendered to Weaver Nut Company, brought by plaintiffs Reis and Katz in their capacity as assignees of the rights of the Company. I concluded that there was a contract between the Company and Barley Snyder for legal services, but that the contract was not breached by Barley Snyder. Moreover, plaintiffs failed to establish by a preponderance of the evidence that the Company suffered any damages under the contract.

Plaintiffs appealed from the final judgment entered September 30, 2009 to the United States Court of Appeals for the Third Circuit. During the pendency of the appeal, the Supreme

Court of Pennsylvania overruled the decision of the Superior
Court of Pennsylvania in Pallante, supra, and determined that the
release of a principal does not bar claims against the
principal's agent, where the release expressly preserves
potential claims against the agent.  See Maloney v. Valley
Medical Facilities, Inc., 603 Pa. 399, 984 A.2d 478 (Pa. 2009).

        As a result of the Maloney decision of the Supreme
Court of Pennsylvania, the Third Circuit in this case reinstated
plaintiffs' dismissed individual claims for breach of fiduciary
duty (Count I) and tortious interference with contractual
relations (Count IV).

        The Third Circuit Court of Appeals upheld my dismissal
of all the remaining claims which I dismissed either pretrial
(at the motion-to-dismiss stage), or at the conclusion of trial.
See Reis v. Barley Snyder, Snyder, Senft & Cohen, LLC,
426 Fed.Appx. 79 (3d Cir. 2011).

        Finally, the Third Circuit reversed and remanded this
matter.  In its Opinion filed February 11, 2011, the Third
Circuit stated:

                Neither side addresses the question of
        whether the District Court's factual findings as
        to Weaver Nut's claims should bind Reis and Katz
        and preclude them from pursuing their individual
        claims.  Even a non-party may be "bound by the
        determination of issues" if he or she "controls or
        substantially participates in the control of the
        presentation on behalf of a party."  This is a
        factual inquiry, and the [District] Court is in a
        better position than we are to address it in the

first instance.  We will therefore reverse the
dismissal of the individual claims for breach of
fiduciary duty and tortious interference, and will
remand this case for an analysis of the preclusion
issues and, if necessary, further proceedings on
these two individual claims.

Reis, 426 Fed.Appx. at 83-84 (citations omitted).

The gist of defendant's within motion for summary judgment is that my Findings of Fact and Conclusions of Law at the non-jury trial do preclude plaintiffs from moving forward on these remaining two reinstated and remanded claims.

<u>STANDARD OF REVIEW</u>

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); <u>Federal Home Loan Mortgage Corporation v. Scottsdale Insurance Company</u>, 316 F.3d 431, 433 (3d Cir. 2003).  Only facts that may affect the outcome of a case are "material".  Moreover, all reasonable inferences from the record are drawn in favor of the non-movant.  <u>Anderson</u>, <u>supra</u>.

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on

-11-

which it bears the burden of proof.  <u>See</u> <u>Watson v. Eastman Kodak</u>
<u>Company</u>, 235 F.3d 851, 857-858 (3d Cir. 2000).

Plaintiff cannot avert summary judgment with
speculation or by resting on the allegations in his pleadings,
but rather must present competent evidence from which a jury
could reasonably find in his favor.  <u>Ridgewood Board of Education</u>
<u>v. N.E. for M.E.</u>, 172 F.3d 238, 252 (3d Cir. 1999); <u>Woods v.</u>
<u>Bentsen</u>, 889 F.Supp. 179, 184 (E.D.Pa. 1995).

<u>FACTS</u>

In my Verdict and Adjudication dated and filed
September 30, 2009 I set forth 139 Findings of Fact, 11
Conclusions of Law and discussion of the applicability of those
findings and conclusions to the claims presented at the previous
non-jury trial.  I incorporate those findings and conclusions
here.  However, I restate here those findings of fact and
conclusions of law which are pertinent to my discussion and
conclusions below.

<u>Findings of Fact</u>

15.  Mr. Katz operates a company named Summit Private
Capital Group, which is a fictitious name under which
he does business.

17.  Weaver Nut Company, through its President E. Paul
Weaver, III, entered into the Merchant Banking and
Corporate Development Agreement with Summit Private
Capital Group through Lawrence J. Katz as Executive
Managing Director.

43.  From late 2001 through early 2003 Mr. Katz worked
behind the scenes attempting to find new business

acquisitions and possible business partners for Weaver
Nut Company.

44.  One potential transaction pursued by Mr. Katz
involved a possible merger with a company named
National Bulk Foods.  No deal was ever consummated with
National Bulk Foods.

54.  On March 26, 2003 Mr. Weaver had an initial
telephone contact with Paul Mattaini, Esquire, a
partner at Barley Snyder.  Barley Snyder did not
represent either E. Paul Weaver, III or Weaver Nut
Company before that date.

55.  During the telephone call with Attorney Mattaini,
Mr. Weaver discussed the situation at the Company, the
problems as he perceived them, and he gave Attorney
Mattaini a brief description of the Merchant Banking
and Corporate Development Agreement.

56.  At the time Mr. Weaver retained Barley Snyder, he
was the President and sole director of Weaver Nut
Company.

57.  On April 1, 2003 Mr. and Mrs. Weaver, together
with John Maksel, met with Attorneys Mattaini and
Shawn M. Long, of Barley Snyder at the offices of the
firm.

58.  During the April 1, 2003 meeting, Mr. Weaver gave
Attorney Mattaini a brief description of the history of
the Company, how Mr. Weaver became involved with
Mr. Reis and Mr. Katz, the situation regarding the
development agreement and what was happening under the
agreement, differences that had developed between
Messrs. Reis and Katz and Mr. Weaver on how the Company
was being run, and how all those issues fit with the
relationship that was ongoing under the development
agreement.

59.  Mr. Weaver expressed a serious concern to Attorney
Mattaini that the mixed messages that were being sent
to customers and vendors were hurting both the short-
and long-term viability of the Company.

60.  Mr. Weaver falsely advised Mr. Mattaini that Mr.
Reis and Mr. Katz were not shareholders in the Company

and that the stock warrants mentioned in the development agreement had not been exercised by them.

61.  In determining whether to undertake the representation of Weaver Nut Company and E. Paul Weaver, III, Attorney Mattaini considered the applicable provisions of the Pennsylvania Rules of Professional Conduct including Rule 1.13 and its comments.  Attorney Mattaini correctly concluded that the firm was not precluded from representing either or both parties.

62.  Barley Snyder inquired regarding the corporate records of Weaver Nut Company with its corporate counsel Robert Sisko, Esquire, but was advised that counsel did not have the corporate records being sought.

63.  Angela Weaver Nolt, Mr. and Mrs. Weaver's daughter, who was an employee of Weaver Nut Company, advised Barley Snyder that the box where the corporate records were stored at Weaver Nut Company had been moved, and when located, did not contain the corporate records that had previously been in the box.  Weaver Nut Company advised Barley Snyder that it did not have the corporate records requested by Barley Snyder or copies of them.

64.  Weaver Nut Company employees were unable to find, and Barley Snyder was unable to review, the corporate records of Weaver Nut Company because Michael Reis had removed the corporate records from the premises of Weaver Nut Company and had placed them in a safe deposit box at Blue Ball National Bank without the knowledge or consent of E. Paul Weaver, III.

65.  The corporate records that were removed from Weaver Nut Company included all the original share certificates for the Company.

66.  Barley Snyder advised Mr. Weaver that termination of the Merchant Banking and Corporate Development Agreement and termination of the employment of Mr. Reis and Mr. Katz and other employees was an aggressive strategy which might lead to litigation.  After consultation with counsel, Mr. Weaver decided that it was in the best interests of Weaver Nut Company to end

its relationship with Messrs. Reis and Katz and to terminate the employment of certain employees.

67.   Barley Snyder took direction from Mr. Weaver based upon his role as President and sole director of Weaver Nut Company and his assertion that Messrs. Reis and Katz were not shareholders in the Company.

68.   Attorney Mattaini reasonably believed that Barley Snyder was able to provide competent and diligent representation to Weaver Nut Company and to Mr. and Mrs. Weaver at the same time because their interests were not adverse to one another, based upon Mr. Weaver's false representations that Messrs. Reis and Katz were not shareholders.

69.   Barley Snyder did an internal conflict of interest check prior to meeting with the Weavers.

70.   On April 11, 2003, Barley Snyder attorney Shawn M. Long sent a letter to Mr. Reis and Mr. Katz.

71.   The April 11, 2003 letter was copied to Barley Snyder attorneys Paul G. Mattaini, a partner, and Matthew H. Haverstick, an associate.

72.   The April 11, 2003 letter advised Mr. Reis and Mr. Katz that Weaver Nut Company was terminating the Merchant Banking and Corporate Development Agreement together with their employment with Weaver Nut Company.

73.   On April 11, 2003, other Company personnel hired by Mr. Reis, including the office manager (Marie Wagner), the warehouse manager (George Haynes) and the general manager (David Fisher), were fired by E. Paul Weaver, III.

74.   Barley Snyder and its attorneys took action on behalf of the Weavers and Weaver Nut Company without consulting Mr. Reis and Mr. Katz.

75.   Barley Snyder received instructions from Weaver Nut Company through E. Paul Weaver, III, its President and sole director who had legal authority to speak for, and bind, Weaver Nut Company.

76.   On or about April 15, 2003 Messrs. Reis and Katz advised Barley Snyder that together they held 50% of

the shares in Weaver Nut Company.  Mr. Weaver disputed
this assertion when questioned by Barley Snyder
attorneys.  Because the corporate books and records
were missing, Barley Snyder had no means of verifying
either position.  Barley Snyder correctly determined
that the issue of who owned shares in Weaver Nut
Company was in dispute.

96.  On April 30, 2003 an action was commenced in the
Court of Common Pleas of Lancaster County, Pennsylvania
entitled Weaver Nut Company, Inc. et al. v. Summit
Private Capital Group, et al., No. CI-03-03473 seeking
damages for the alleged torts of defamation, tortious
interference with contractual relations and conversion.
On May 1, 2003 the case was removed to the United
States District Court for the Eastern District of
Pennsylvania and was assigned to Senior District Judge
James McGirr Kelly as case number 2003-cv-2815.

97.  On April 30, 2009 Weaver Nut Company and E. Paul
Weaver, III also filed a Petition for Special Injunc-
tion in Lancaster County case number CI-03-03473
seeking, among other things, to enjoin Messrs. Reis and
Katz from communicating with vendors of Weaver Nut
Company, interfering with the operation of the Company
and for the return of all Company books, records and
other property.

98.  On April 30, 2003 a shareholder derivative action
was commenced in the United States District Court for
the Eastern District of Pennsylvania entitled Reis et
al. v. Weaver Nut Company et al, and was assigned to
Judge James McGirr Kelly as case number 2003-cv-2621.

99.  The filing of the shareholder derivative action
created a potential conflict of interest for Barley
Snyder in their joint representation of both Weaver Nut
Company and Mr. and Mrs. Weaver.  Barley Snyder advised
Weaver Nut Company that it would need to secure other
counsel.  Barley Snyder continued to represent Mr. and
Mrs. Weaver, individually.

100.  Weaver Nut Company attempted to retain the
services of their former corporate counsel Robert
Sisko, to no avail.

101.  On May 20, 2003 an attorney not affiliated with
Barley Snyder, Christopher S. Underhill, Esquire, met

-16-

with Mr. Weaver at the offices of Barley Snyder to discuss his possible retention on behalf of Weaver Nut Company.

102.  On May 22, 2003 Attorney Underhill sent an engagement letter to Weaver Nut Company accepting the Company as a client, addressing the scope and purpose of the representation, explaining his purpose as counsel for the Company and attaching his Statement of Fees and Costs and explaining that his law firm would bill the Company on a monthly basis for his services.

103.  On May 23, 2003 Mr. Weaver, as President of Weaver Nut Company, signed the engagement letter indicating his receipt of the letter from Attorney Underhill and agreement to its terms.

104.  Barley Snyder did not represent or provide any legal services or advice to Weaver Nut Company after the Company retained Attorney Underhill.

113.  Attorney Underhill determined that the shareholder derivative lawsuit brought by Messrs. Reis and Katz was not helpful to the Company and would probably be harmful to the Company.  Attorney Underhill concluded that Weaver Nut Company should defend the lawsuit rather than acting on the plaintiff's side.

114.  Attorney Underhill made all of his legal determinations independently and free of any influence or coercion from either John Maksel, E. Paul Weaver, III or Barley Snyder.

117.  Overall, the financial program instituted after the departure of Messrs. Reis and Katz, together with the cost savings from the firing of all the employees including Messrs. Reis and Katz, resulted in significant savings to the Company.

118.  The increases in operating costs implemented by Messrs. Reis and Katz offset the increase in gross profit margin that the Company enjoyed during their tenure.

121.  Weaver Nut Company significantly decreased its operating costs after the departure of Messrs. Reis and Katz.

-17-

130.   Despite falling sales, Weaver Nut Company was more profitable in 2004, 2005 and 2006 than it had been in 2001-2003.

132.   E. Paul Weaver, III in his role as President and sole director of Weaver Nut Company owed fiduciary duties to Mr. Reis, Mr. Katz and to Weaver Nut Company.

133.   Mr. Weaver breached his fiduciary duties to Mr. Reis, Mr. Katz and Weaver Nut Company.

134.   Barley Snyder knew that Mr. Weaver owed fiduciary duties to the Company.

135.   Barley Snyder had no knowledge that Mr. Weaver was breaching fiduciary duties to either the Company or to Messrs. Reis and Katz.

136.   On December 15, 2003 all litigation involving Mr. Reis, Mr. Katz, the Weavers and the Company was settled pursuant to a consolidated Settlement Agreement.

137.   As part of the settlement, Messrs. Reis and Katz received a combined $415,000 of which $100,000 was for attorneys' fees.  In addition, under the Settlement Agreement Weaver Nut Company was required to provide health insurance coverage for Messrs. Reis and Katz for a period of one year.

138.   As part of the terms of the Settlement Agreement, Messrs. Reis and Katz were required to return to the Weavers any shares in Weaver Nut Company they may have had.

139.   As part of the settlement, Weaver Nut Company assigned to Mr. Reis and Mr. Katz any claims the Company might have against Barley Snyder.

## Conclusions of Law

1.  Defendant Barley Snyder did not breach its fiduciary duties to Weaver Nut Company.

2.  Defendant Barley Snyder did not aid or abet the breach of any fiduciary duty owed by E. Paul Weaver, III, to plaintiffs Michael Reis, Sr. or Lawrence J. Katz.

3.  Defendant Barley Snyder did not aid or abet the breach of any fiduciary duties owed by E. Paul Weaver, III, to Weaver Nut Company.

4.  Defendant Barley Snyder was not negligent in the performance of its professional services to Weaver Nut Company.

5.  Defendant Barley Snyder did not tortiously interfere with Weaver Nut Company's contractual relations with Michael Reis, Sr., Lawrence J. Katz or Summit Private Capital Group.

6.  Defendant Barley Snyder was privileged and legally justified in assisting the termination of the Merchant Banking and Corporate Development Agreement.

8.  The Merchant Banking and Corporate Development Agreement did not create a joint venture between Weaver Nut Company and Summit Private Capital Group.

9.  Plaintiffs Michael Reis, Sr. and Lawrence J. Katz have not proven by a preponderance of the evidence that they suffered any damages in their individual capacities.

11.  Plaintiffs' proposed damages are all speculative and conjectural.

<u>CONTENTIONS OF THE PARTIES</u>

<u>Contentions of Defendant</u>

Defendant contends that my Findings of Fact and Conclusions of Law regarding the five claims brought by plaintiffs as assignees of Weaver Nut Company and the one claim brought by plaintiffs individually (for aiding and abetting breach of fiduciary duty) preclude plaintiffs from now recovering on the two claims which were remanded by the United States Court of Appeals for the Third Circuit (breach of fiduciary duty and interference with contractual relations).  Defendant argues that

-19-

the Third Circuit recognized that "[even] a non-party may be
'bound by the determination of issues' if he or she 'controls or
substantially participates in the control of the presentation
on behalf of a party.'"  Reis, 426 Fed.Appx. 79, at 83, citing
Marshak v. Treadwell, 240 F.3d 184, 195 (3d Cir. 2001).

     Defendant asserts that plaintiffs controlled the
presentation of the previously dismissed claims.  Specifically,
defendant asserts that each plaintiff had a proprietary and
financial interest in the potential judgment and in this court's
factual and legal determinations.  Each was present at trial and
testified on his own behalf and on behalf of the assigned claims
of Weaver Nut Company.

     Furthermore, defendant argues that the release entered
into between the Weavers and plaintiffs clearly provided that no
other entity or person held a stake in the previously adjudicated
claims.  Thus, defendant contends that under the Third Circuit's
decision in Marshak, plaintiffs are bound by this court's
previous Findings of Fact and Conclusions of Law.

     Regarding plaintiffs' breach of fiduciary duty claim,
defendants contend that they owe no fiduciary duties to
plaintiffs because there was no attorney-client relationship
based upon an express written or oral contract.  Furthermore,
defendant contends that plaintiffs never asked it to do anything
for them, nor did defendant agree to provide any services to

plaintiffs.  On the contrary, defendant law firm argues that it
was counsel for the corporation (Weaver Nut Company) and its
President (E. Paul Weaver, III), and was not counsel for
plaintiffs in any role.

Regarding plaintiffs' claim for tortious interference
with contractual relations, defendant argues that as the agent of
Weaver Nut Company, it cannot be liable for tortious interference
with a contract between its principal (Weaver Nut) and another
party.  In addition, defendant asserts that it was privileged to
give Weaver Nut Company the advice it gave regarding termination
of the contract with plaintiffs and that defendant is protected
from liability for interfering with contracts.

Finally, defendant asserts that plaintiffs are
precluded from pursuing either of the remanded causes of action
because of my prior determination that plaintiffs have suffered
no damages.  Defendant argues that plaintiffs' inability to
establish any damages at the earlier non-jury trial will preclude
plaintiffs from establishing any damages related to the current
claims, because plaintiffs are collaterally estopped from
revisiting that issue.

## Contentions of Plaintiffs

Initially, plaintiffs argue that neither issue
preclusion (collateral estoppel) or claim preclusion (res
judicata) should apply in this case because plaintiffs did not

-21-

have a full and fair opportunity to litigate the issues presently before the court because of a change in Pennsylvania law on the two remaining claims.  Plaintiffs contend that there are numerous disputes on material issues of fact which preclude granting summary judgment in this matter.

Plaintiffs contend that material disputed issues of fact remain concerning whether defendant had access to Weaver Nut Company's corporate tax returns (which plaintiffs contend clearly demonstrated that Messrs. Reis and Katz were shareholders at the end of 2001 and 2002).  Plaintiffs further contend that a significant dispute remains regarding whether the business arrangement between plaintiffs and Weaver Nut Company constituted a "joint venture", notwithstanding my contrary determination at the earlier trial.  Plaintiffs contend that I erred in making the prior determination, and that issue is not now foreclosed.

Plaintiffs also assert that material disputed issues of fact preclude summary judgment on their claim for tortious interference with contract.  Specifically, plaintiffs argue that under a participation theory, an agent or officer of a corporation may be held individually liable for personal participation in tortious acts.  More specifically, plaintiffs contend that there is an issue of fact for the jury to determine concerning on whose behalf defendant was acting (for Mr. Weaver

or for Weaver Nut Company) when plaintiffs were discharged from Weaver Nut Company.

Finally, plaintiffs contend that they have an expert witness on damages who was not presented at the first trial and that a jury should now determine whether plaintiffs have suffered damages with regard to the remanded claims.

## DISCUSSION

In its remand decision, the United States Court of Appeals for the Third Circuit directed that "an analysis of the preclusion issues, and, if necessary, further proceedings on these two individual claims" should be addressed by this court in the first instance because "[t]his is a factual inquiry and the [trial] Court is in a better position than we are to address it in the first instance." Reis, 426 Fed.Appx. at 83-84.

The first aspect of this inquiry is whether plaintiffs controlled or substantially participated in the control of the presentation of the earlier proceeding. Marshak, supra. Here, contrary to plaintiffs' contention that they did not have a full and fair opportunity to litigate the issues now present in the light of a change in Pennsylvania law on the two remaining claims, plaintiffs were in total control of the presentation of evidence, cross-examination of witnesses and how the entire trial was presented to the court on the original six claims.

-23-

The issues were addressed in detail, and the plaintiffs had 35 trial days in which to present their claims.  To now aver that they did not have a full and fair opportunity to address all the relevant issues belies the extensive record produced at trial and over emphasizes the import of the <u>Maloney</u> decision of the Supreme Court of Pennsylvania.

Specifically, plaintiffs contend that <u>Maloney</u> dramatically changed agency law in the Commonwealth of Pennsylvania.  I disagree.  In <u>Maloney</u>, the Supreme Court of Pennsylvania did not change the substantive law concerning agency.  Rather, the Court simply permitted the parties to craft releases to permit claims against agents which ordinarily would be precluded by a release of the principal.

Thus, <u>Maloney</u> did not change the elements or proof necessary to prove claims against an agent.  It simply permitted some claims to proceed by agreement of the parties that normally would have been released if the claims against the principal were released.  Therefore, based upon my reading of <u>Maloney</u>, I conclude that plaintiffs' contention that <u>Maloney</u> significantly changed the law of agency is without merit.

Accordingly, after presiding over the lengthy non-jury trial in this case I can state without reservation that plaintiffs controlled the presentation of evidence and had a full and fair opportunity to address all the issues involved in the

case.  Thus, I must addre+ss the elements of collateral estoppel to determine whether my previous Findings of Fact and Conclusions of Law now preclude plaintiffs from satisfying all of the elements of their two remaining causes of action.

For collateral estoppel to preclude re-litigation of an issue, each of the following factors must be present: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action. United States v. 5 Unlabeled Boxes, 572 F.3d 169 (3d Cir. 2009).

Initially, I conclude that the issues now before the court, more fully discussed below, were the identical issues previously adjudicated and actually litigated.  As noted above, plaintiffs were fully represented at the earlier trial[3] and controlled the presentation of all of their evidence.  For instance, at the earlier trial, plaintiffs presented evidence of damages both to the Company and to themselves individually.[4] Also, the issue of whether the Merchant Banking and Corporate Development Agreement between Weaver Nut Company and plaintiff Katz's Summit Private Capital Group constituted a joint venture

---

[3]    Plaintiffs were represented at the earlier trial and on appeal by experienced and competent counsel, Lynanne B. Wescott, Esquire, who also currently represents them.

[4]    See for example Findings of Fact 117 and 118 and Conclusions of Law 9 and 11, above.

was adjudicated.[5]  Furthermore, the issue whether defendant
Barley Snyder was privileged and legally justified in assisting
the termination of the Merchant Banking and Corporate Development
Agreement was adjudicated as well.[6]

In my September 30, 2009 Adjudication, I made 139
Findings of Fact and 11 Conclusions of Law based upon testimony
of 22 witnesses and 179 exhibits presented and admitted at trial.
Each Finding of Fact was supported by the record and my
credibility determinations, and each Conclusion of Law was
supported by the pertinent Findings of Fact.

The issues were aggressively litigated by each party,
and my findings and conclusions were necessary to determine the
prevailing party on each of the six claims then before the court.
Most of the specific findings and conclusions reprinted above are
directly on point to the issues now before this court.  Thus, I
conclude that all of the matters addressed in my Findings of Fact
and Conclusions of Law were necessary to that decision.[7]

---

[5]    See Conclusion of Law 8, above, and the discussion of this aspect
of the case at pages 43 through 45 of the Adjudication filed September 30,
2009 (Document 205).

[6]    See Conclusion of Law 6, above, and the discussion of this aspect
of the case at pages 47 through 49 of the Adjudication.

[7]    None of my 139 Findings of Fact were attacked on appeal by any
party or vacated by the Third Circuit Court of Appeals.  (However, the Third
Circuit did identify a proofreading error in my Finding of Fact 139, which I
have corrected in the Findings of Fact section above.  See Reis, 426 Fed.Appx.
at 82 n. 2.

<u>Remanded Claims</u>

**Breach of Fiduciary Duty**

In Count I of the Amended Complaint, plaintiffs bring a cause of action for breach of fiduciary duty by defendant. Specifically, plaintiffs assert that by representing both Weaver Nut Company and the Weavers, defendant Barley Snyder breached a fiduciary duty that it owed to plaintiffs as 50% shareholders in the Company.  More specifically, plaintiffs assert that the Merchant Banking and Corporate Development Agreement between Weaver Nut Company and plaintiff Katz's Summit Private Capital Group was for the benefit of the Company and that by aiding the Weavers in terminating that contract, defendant law firm harmed the Company.

In addition, plaintiffs assert that defendant was operating under a conflict of interest in representing both the Company and the Weavers at the same time.  Also, plaintiffs argue that defendant owed them a fiduciary duty because the Merchant Banking and Corporate Development Agreement between Weaver Nut Company and Summit Private Capital Group (a fictitious name company under which plaintiff Katz does business) created a joint venture.

The elements which plaintiffs must prove in a claim for breach of a fiduciary duty are:

> (1) that the defendant negligently or
> intentionally failed to act in good faith and
> solely for the benefit of plaintiff in all matters
> for which he or she was employed; (2) that the
> plaintiff suffered injury; and (3) that the
> agent's failure to act solely for the plaintiff's
> benefit...was a real factor in bringing about
> plaintiff's injuries.

Meyers v. Sudfeld, 2007 U.S.Dist. LEXIS 7634 at *32 (E.D.Pa.

Feb. 2, 2007)(Padova, J.) citing McDermott v. Party City Corp.,

11 F.Supp.2d 612, 626 n. 18 (E.D.Pa. 1998)(Robreno, J.).

An attorney owes a fiduciary duty to his client which

"demands undivided loyalty and prohibits the attorney from

engaging in conflicts of interest, and breach of such duty is

actionable."  Maritrans GP Inc. v. Pepper, Hamilton & Scheetz,

529 Pa. 241, 253, 602 A.2d 1277, 1283 (Pa. 1992).

Defendant contends that there is no attorney-client

relationship between plaintiffs and defendant.  Thus, defendant

argues that because there was no attorney-client relationship

between plaintiffs and defendant, defendant owed no duties to

plaintiffs nor was defendant subject to any requirement to act

for plaintiffs' benefit.  Defendant further contends that my

previous Verdict and Adjudication has already determined that

plaintiffs in their individual capacities suffered no damages.

In their brief, plaintiffs do not specifically address

the elements of the cause of action of breach of fiduciary duty.

Instead they make assertions about what findings I did not make

about what information the corporate tax returns may have

revealed to defendants if they had been reviewed, sought to re-
litigate the issue already decided by me concerning whether or
not the agreement between Weaver Nut Company and Summit Private
Capital Group created a joint venture.[8]

Conclusion of Law 8 in my September 30, 2009
Adjudication specifically states: "The Merchant Banking and
Corporate Development Agreement did not create a joint venture
between Weaver Nut Company and Summit Private Capital Group."
Conclusion of Law 8 was necessary for my determinations regarding
plaintiff's claims for the aiding and abetting breach of
fiduciary duty which they brought individually, the breach of
fiduciary duty claim they brought as assignees of Weaver Nut
Company and my determination whether defendants were operating
under a conflict of interest.  Thus, Conclusion of Law 8 was
relevant for a number of issues in the underlying Adjudication.

Plaintiff contends that the Third Circuit did not
specifically uphold my determination that there was no joint
venture in this case.  However, when the court of appeals
reverses a judgment and remands for further proceedings on a
particular claim or issue, leaving other determinations of the
trial court intact, the unreversed determinations of the trial
court normally continue to work an estoppel.  Cowgill v. Raymark

---

[8]    See Plaintiffs' Memorandum of Law in Opposition to Defendant's
Motion for Summary Judgment at pages 9-17.

Industries, Inc., 832 F.2d 798, 802 (3d Cir. 1987). "When the estoppel is operative in proceedings in the same case on remand, courts frequently speak in terms of the law of the mandate or the law of the case rather than collateral estoppel but the underlying principle is the same."   Id.

       In footnote 4 of its decision on appeal, the United States Court of Appeals for the Third Circuit stated: "Because we will affirm the dismissal of the professional negligence claim due to the lack of damages to Weaver Nut, we need not address plaintiffs' claim that the District Court erred in applying the law of Pennsylvania, rather than New Jersey, and in finding there was no joint venture."   Reis, 426 Fed.Appx. at 84.   Furthermore, it is long-settled that the doctrine applies not only to the issues that were actually discussed by the court in a prior decision, but also to those issues necessarily decided by implication.   See Todd and Company, Inc. v. Securities and Exchange Commission, 637 F.2d 154 (3d Cir. 1980).

       Thus, contrary to plaintiff's assertions, the issues of whether defendant acted under a conflict of interest or whether the Merchant Banking and Corporate Development Agreement created a joint venture between Weaver Nut Company and Summit Private Capital Group under New Jersey law are issues that have been finally decided for the purposes of this remand.

In addition, the issue of whether plaintiffs suffered any individual damages was also previously determined. Specifically, Conclusion of Law 9 states: "Plaintiffs Michael Reis, Sr. and Lawrence J. Katz have not proven by a preponderance of the evidence that they suffered any damages in their individual capacities."; and Conclusion of Law 11 states: "Plaintiffs' proposed damages are all speculative and conjectural."

I conclude that plaintiffs have not produced sufficient evidence to overcome defendant's motion for summary judgment because they have not demonstrated that defendant was employed by plaintiffs in a manner that required defendant to fulfill any fiduciary duties to plaintiffs. Moreover, plaintiffs have not shown that they suffered any injury.

In addition, plaintiffs did not demonstrate a failure to act on the part of defendant or any injury. Therefore, plaintiffs cannot establish the third element of a claim for breach of fiduciary duty, that is that the failure of defendant attorneys to act solely for plaintiffs' benefit was a real factor in bringing about plaintiffs' injuries.

Next, I determined in Conclusion of Law 9 that plaintiffs did not prove that they suffered any damages in their individual capacities. That conclusion was support by, among others, Findings of Fact 117 and 118 and by the discussion

contained on pages 32-35 of the Adjudication.  Specifically, I concluded that Weaver Nut Company was more profitable without Messrs. Reis and Katz than it was with them.

In Finding of Fact 121, I found that Weaver Nut Company significantly decreased its operating costs after the departure of Messrs. Reis and Katz.  In Finding of Fact 130, I found that despite falling sales, Weaver Nut Company was more profitable in 2004, 2005 and 2006 (after the termination of plaintiffs) than it had been in 2001-2003 (when plaintiffs were involved in the operation of the company).  This is true in significant part because after the termination of plaintiffs on April 11, 2003 (Finding of Fact 72) and the termination on the same date of other company personnel hired by Mr. Reis (Finding of Fact 73), the Company no longer had to pay their salaries, benefits, overhead and expenses.

Because I concluded that the Company was financially better off, there can be no individual damages for the lost expectations of profits as presented by plaintiffs at the previous trial.

Moreover, plaintiffs are collaterally estopped from presenting a damages expert witness at a new trial to establish individual damages in light of my previous determination that the Company was better off without plaintiffs.  Plaintiffs cannot now prove that they would have had some expectation of greater share

-32-

value or that they lost potential profits when I have already concluded at the previous trial that with their continued participation in Weaver Nut Company, the Company would not have been as profitable as it was without their participation.

As indicated in the Standard of Review section, above, plaintiffs as the non-movant in defendant's motion for summary judgment, must establish the existence of each element on which they bear the burden of proof.  Plaintiffs cannot avert summary judgment with speculation or by resting on the allegations in their pleadings, but rather must present competent evidence from which a jury could reasonably find in their favor.

Accordingly, I grant defendant's motion for summary judgment and dismiss that remaining portion of Count I of plaintiffs' Amended Complaint in which plaintiffs in their individual capacities assert a cause of action against defendant for breach of fiduciary duty.

### Tortious Interference with Contractual Relations

The remaining claim on remand is contained in Count IV of the Amended Complaint.  In Count IV plaintiffs individually allege tortious interference with contractual relations by defendant.

To state a claim for tortious interference with contractual relations a plaintiff must allege: (1) the existence of a contract; (2) purposeful action by the defendant specifi-

cally intended to harm the existing relation; (3) absence of privilege or justification on the part of the defendant; and (4) actual legal damage as a result of defendant's conduct. CAT Internet Services, Inc. v. Magazines.com, Inc., 2001 U.S.Dist. LEXIS 8 at *14 (E.D.Pa. Jan. 4, 2001)(Padova, J.) citing Shiner v. Moriarty, 706 A.2d 1228, 1238 (Pa.Super. 1998).

Pennsylvania law recognizes a tortious interference claim only where defendant has interfered with a plaintiff's contract with a third party.  Center for Concept Development, Ltd., v. Godfrey, 1999 U.S.Dist.LEXIS 3337 at *6 (E.D.Pa. Mar. 23, 1999) (Hutton, J.).

As noted above, defendant argues that it was the agent of Weaver Nut Company and as such cannot be liable for tortious interference with a contract between the principal (Weaver Nut Company) and another party.  In addition, defendant asserts that it was privileged to give Weaver Nut Company the advice it gave regarding termination of the contract with plaintiffs and that defendant is protected from liability for interfering with contracts.

Finally, defendant asserts that my prior determination that plaintiffs have suffered no damages precludes this cause of action because the measure of damages applicable to the claims presented at the earlier trial are no different than the measure of damages for the current two remanded claims.  Therefore,

defendant argues, plaintiffs are collaterally estopped from re-litigating this damages issue.

It is clear from the evidence presented at the first trial that plaintiffs can establish that there was a contract in this case (the Merchant Banking and Corporate Development Agreement).  Moreover, plaintiffs can establish that defendant clearly took purposeful action to break the contract on behalf of Mr. Weaver and Weaver Nut Company.  However, I conclude that based upon my prior findings, plaintiff cannot satisfy either of the other elements of the cause of action.

Conclusions of Law 5, 6, 9 and 11 cover the issues of privilege and damages.  Specifically, they provide:

> 5.  Defendant Barley Snyder did not tortiously interfere with Weaver Nut Company's contractual relations with Michael Reis, Sr., Lawrence J. Katz or Summit Private Capital Group;
>
> 6.  Defendant Barley Snyder was privileged and legally justified in assisting the termination of the Merchant Banking and Corporate Development Agreement;
>
> 9.  Plaintiffs Michael Reis, Sr. and Lawrence J. Katz have not proven by a preponderance of the evidence that they suffered any damages in their individual capacities; and
>
> 11.  Plaintiffs' proposed damages are all speculative and conjectural.

As noted above, each of these Conclusions of Law was based upon the Findings of Fact contained and discussed in the September 30, 2009 Adjudication.  Thus, because none of these

findings and conclusions were overturned on appeal, they bind plaintiffs on this remand.

Accordingly, because I conclude that plaintiffs did not and cannot satisfy either of the last two elements of their cause of action for tortious interference with contractual relations (the absence of privilege or justification on the part of the defendant and actual legal damage as a result of defendant's conduct), I grant defendant's motion for summary judgment.  See Watson v. Eastman Kodak Company, 235 F.3d 851, 857-858 (3d Cir. 2000).

CONCLUSION

For all the foregoing reasons, I grant defendant's motion for summary judgment and dismiss the remain portions of Counts I and IV of plaintiff's Amended Complaint.